STOULIG, Judge.
Plaintiff, Lee Moving & Storage, Inc., filed suit to rescind an allegedly ultra vires sale of its 35-foot fiberglass 1971 Concord boat to defendant A1 Bourgeois, doing business as A1 Bourgeois Plumbing & Repairs, for $15,000. Plaintiff alleged the buyer accepted title from defendant, William Lee, the president of plaintiff corporation, knowing that he was without authority to sell the vessel. From a judgment decreeing the sale a nullity and ordering the purchase price returned, only Bourgeois, the defendant’s purchaser, has appealed.
It is apparent from the record that vendor and purchaser and their respective attorneys were aware that William Lee’s authority to sell might later be challenged.
We reconstruct the negotiations and sale as follows: After indicating he was willing to pay $15,000 for the boat to an associate of William Lee, Bourgeois was contacted by Lee and a meeting was arranged for late afternoon of April 23, 1975 on the boat. The seller and the buyer were each represented by their respective attorneys. They preliminarily discussed an injunction that had issued to Lee in connection with domestic litigation in which he was involved forbidding him from disposing of any assets of the community of acquets and gains existing between himself and his wife Carol Lee. They all testified that both attorneys were of the opinion that Lee could nonetheless alienate the boat as majority stockholder of the corporate owner. Appellant’s attorney required a resolution from the corporation authorizing the sale of the boat, although he testified this was the first time in long years of practice that he had demanded a resolution to support a corporate sale of a chattel.
The next problem patent on the face of the title was the designated registered owner. The boat was registered in the name of William Lee. With the injunction outstanding and the title reflecting the vessel presumptively was community property, the buyer’s attorney’s doubts were resolved by Lee himself writing in on his own title “Lee Moving & Storage, Inc. by its President $ * *
Before the buyer’s attorney would release to the vendor his client’s $15,000 certified check, he required a corporate resolution authorizing the sale and a hold-harmless agreement. The former was signed by the secretary of Lee’s attorney as “assistant secretary,” a procedure not authorized by the corporate charter or sanctioned by the board of directors. The latter was executed by Lee individually and in his corporate capacity as president, in which it was agreed that Bourgeois would be indemnified for any judgments that might be rendered against him as the result of the sale and for all costs of defense.
*1194 When cash and documents purporting to convey title were exchanged, it was with the understanding that Bourgeois’ money would be refunded if the sale was questioned. Bourgeois took possession of the vessel on April 25. On April 28, 1975, he applied for a title to the boat in the name of A1 Bourgeois Plumbing. Meanwhile, William Lee’s estranged wife Carol returned from St. Louis where she had been attending IBM school since mid-April. When she learned of the transaction, she went to the boathouse where Bourgeois had docked it and told him she had a court order requiring the release of the vessel to her so she could take it to Scariano’s Boat Works for repairs. On the advice of his attorney, Bourgeois released the boat.
At this point appellant’s attorney demanded from plaintiff’s attorney the boat or the money. In response thereto, William Lee took a $15,000 certified check to the office of appellant’s attorney who advised him his client refused to accept the return of the purchase price and insisted the sale could not be rescinded. Bourgeois discharged his attorney for advising him to accept the tendered return of the $15,000.
Bourgeois denied he was aware of any title problems until Carol Lee repossessed the boat. Initially he denied knowledge of Lee’s questionable authority to convey title until Mrs. Lee appeared at the boathouse; however, he later admitted he had been willing to return the boat until Mrs. Lee repossessed it in the presence of his acquaintances and embarrassed him by doing so.
Appellant seeks a reversal on either of two theories: (1) Lee, as a majority stockholder and president of the corporation, had full authority in law to enter into a valid contract of sale of a corporate asset; or alternatively, (2) he had apparent authority to act for his corporation and thus Lee Moving & Storage, Inc., is bound by any agreement Lee made with a third party.
The evidence defeats the first proposition. During this period William Lee unquestionably owned 499 shares of the outstanding 1,000 shares of stock issued, Carol Lee owned 499 shares, and Kenneth Lee was recorded owner of the other two shares on the corporate books. William Lee claims he acquired the two shares of Kenneth’s prior to the sale of Bourgeois. Plaintiff corporation and Carol Lee deny this.
The articles of incorporation refute that Lee'was a majority stockholder when he sold the boat because the disputed shares, even if actually owned by William Lee, were never transferred or reissued in his name in the corporate records. Article IV of the charter provides the corporation will only be bound by stock transfers recorded on its books. But even if Lee did succeed in proving record ownership of 501 of the outstanding 1,000 shares, he would still be powerless acting alone to alienate one of the primary assets of the corporation. Article VI vests the corporate powers and the ability to exercise them in a three-man board of directors.
In Hayes v. Johnson, 299 So.2d 566 (La. App. 4th Cir. 1974), we nullified a sale of corporate property by an individual shareholder because the corporate charter required the business of the company to be conducted by three directors.
Having concluded Lee had no authority to bind the corporation; we next consider whether Bourgeois nonetheless can maintain the sale on the theory he acted in good faith in dealing with a corporate officer with apparent authority. Ideal Savings & Homestead Ass’n v. Kerner, 208 La. 513, 23 So.2d 200 (1945), validates a purchaser’s right to retain property of a corporation sold ultra vires by one of its officers, however, as a prerequisite, the purchaser must deal in good faith and rely on the apparent authority of the officer or director to act.
This is not a case of good faith reliance. To the contrary there is every indication buyer and seller and their respective attorneys foresaw the potential attack on Lee’s capacity and/or right to sell the boat before title passed. We have summarized the evidence upon which the trial court found no good faith reliance on corporate authority on Bourgeois’ part and fully con *1195 cur in this result. The sale was properly ordered rescinded.
Finally we consider Bourgeois’s demand for attorney fees and cost of litigation under the hold-harmless agreement executed by William Lee individually and in his capacity as president of the corporation.
Having determined that Lee did not possess the authority, expressed or apparent, to act for the corporation in the sale of the boat, it follows that he cannot bind the corporation in the ancillary indemnity agreement arising out of the purported sale.
With regard to the individual liability of William Lee, at the time this agreement was executed, both Lee and Bourgeois agreed they would return to the pre-April 23 status quo if problems or questions later developed about the validity of the transfer. When the problem did arise, William Lee lived up to his agreement by tendering $15,-000 cash to the buyer’s attorney, but the buyer would not rescind the sale. Because his liability stems from his own willful refusal to honor his agreement, he cannot now demand indemnification under the breached agreement. By its terms the in-demnitee’s negligence vitiates the indemnification; therefore, his willful refusal to comply with the terms of the agreement should produce the same legal result.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

REDMANN, J., concurs with written reasons.